IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY SMITH,<br><br>          Plaintiff,<br><br>     v.<br><br>CONNIE GIPSON, et al.,<br><br>          Defendants. | No. 2:20-CV-0071-DAD-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' unopposed motion for summary judgment. See ECF No. 56.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See

///

///

1

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I.  BACKGROUND

### A.  Plaintiff's Allegations

This action currently proceeds on Plaintiff's first amended complaint on Plaintiff's claims that Defendants thwarted the free exercise of his religion. See ECF No. 30; see also ECF No. 31. As Defendants' motion for summary judgment is unopposed, the Court accepts Defendants' summary of Plaintiff's allegations as follows:

> Plaintiff alleges Defendants violated his right under Religious Land Use and Institutionalized Persons Act (RLUIPA). (First Amended Complaint (FAC) (ECF No. 30) at 3.) Specifically, Plaintiff contends Defendants reduced his RLUIPA right to a privilege because they created regulations that restricted him from possessing and using certain items necessary for his religious belief in Thelema. (*Id.*) These items are colognes, perfumes, incense sticks, tobacco products, rolling papers, lighters and matches, and different colored charm bags. (*Id.*) Plaintiff claims he needs to have religious oils, perfumes, and colognes in sixteen fluid ounces per each order, from vendors of his choice, in his cell. (*Id.*) Plaintiff also asserts he must have three to five pounds of loose tobacco, rolling papers, a pipe, and matches or lighters each month from vendors of his choice, and keep said items in his cell to practice a "wheel of love" ceremony. (*Id.*) According to Plaintiff, he must smoke the loose tobacco in his pipe to perform the ceremony. (*Id.*) Plaintiff further argues Defendants created and enforced regulations that required him to purchase his religious items from departmentally approved vendors, none of which sell the religious items he wants. (*Id.* at 4.)
> Plaintiff seeks injunctive relief to be able to possess and use sixteen fluid ounces of religious oils, perfumes, and colognes per each order, three to five pounds of tobacco products, 300 to 500 rolling papers each order every thirty days, and matches. (Compl. at 6.) Plaintiff also seeks to purchase said items from vendors of his choice and possess the items in his cell for religious use. (*Id.*) Plaintiff also asks to get an exemption for religious artifacts "similar to those granted to other inmates

3

in CDCR custody," without specifying what such exemptions entail. (*Id.*)

ECF No. 56-1, pg. 8.

### B. The Parties' Evidence

Defendants' motion for summary judgment is supported by a separate statement of undisputed facts, ECF No. 56-2, the declaration of defense counsel Theodore Lee, Esq., and attached exhibits, ECF No. 56-3, the declaration of C. Richey and attached exhibits, ECF No. 56-4, the declaration of J. Guevara, ECF No. 56-5, and the transcript of Plaintiff's deposition, which has been lodged with the Court. Plaintiff has not filed an opposition, though the Court has considered Plaintiff's verified TAC as his declaration. The Court accepts Defendants' statement of undisputed facts, which Plaintiff does not challenge:

> California state prisoners may not possess or use tobacco products. Cal. Penal Code (Penal Code) § 5030.1(a). However, an exemption is possible for departmentally approved religious ceremonies. *Id.* The California Department of Corrections and Rehabilitation (CDCR) enforces this statute by prohibiting any possession or use of tobacco products "on the grounds of any institution/facility that houses or detains inmates." Cal. Code Regs. tit. 15 (Title 15), § 3188(c).
> CDCR has the discretion to permit inmates' use of tobacco products in departmentally approved inmate religious ceremonies. *Id.*, § 3188(c)(1).
> California state prisoners may possess and use personal religious properties purchased from departmentally or locally approved vendors. Title 15, § 3190(b), (k)(4). Specifically, the Religious Personal Property Matrix (RPPM) lists all items that state prisoners may purchase, possess, or use. *Id.*, § 3190(b).
> Each institution's warden must "make every reasonable effort to provide for the religious and spiritual welfare of all interested inmates . . . ." Title 15, § 3210(a). Institutions may provide accommodations for religious services that are "in keeping with facility security and other necessary institutional operations and activities." *Id.* § 3210(c). "A request for a religious service accommodation that requires a specific time, location and/or item(s) not otherwise authorized, will be referred to a Religious Review Committee (RRC) for review and consideration." *Id.* § 3210(d). "Accommodation for religious services that are not granted, shall be for reason(s) which would impact facility/unit safety and security, and orderly day to day operations of the institution." *Id.*
> If the Penal Code or Title 15 proscribes a religious exercise, inmates may request approval to engage in said exercise by submitting a CDCR Form 3067 to their respective housing institution's RRC. (*See* Declaration of C. Richey (Richey Decl.) ¶ 8, Exhibit 2.) The RRC also reviews custody staff's recommendation to disapprove requested religious items. (*Id.* ¶ 7.) After its review, the RRC forwards its recommendation to the Statewide Religious Review Committee (SRRC) using a CDCR Form 2279. (*Id.*, Exhibit 1.)

///

> At the SRRC, a subcommittee comprised of a warden, community resource manager, and legal counsel will review the RRC's recommendation. (Richey Decl. ¶ 12.) The full SRRC will then deliberate and vote on the recommendation for a final decision. (*Id.*) "SRRC's review and approval process does not differ based on the nature or identity of the requesting religious, faith, or spiritual group or belief." (*Id*. ¶ 13). "The process also does not take into account the requesting inmates' personal identifying information, such as race, ethnicity, ancestral heritage, nationality, gender, sexuality, age, disability, or others, that are not relevant for its review and approval process." (*Id.*)
> Plaintiff claims to hold a religious belief in Thelema since 2018. (FAC at 18.) CDCR form 2279 form has been available to all CDCR inmates at their respective housing institutions since December 2014. (Richey Decl. ¶ 7.) CDCR form 3067 is available through each CDCR facility's chaplains and community resources manager. (*Id.* ¶ 8.)
> In May 2021, Plaintiff resided at California Health Care Facility (CHCF). (FAC at 1, 6; Declaration of J. Guevara (Guevara Decl.) ¶ 5.) During his time at CHCF, Plaintiff never sought any religious accommodations to practice his religion, despite being able to do so. (Guevara Decl. ¶¶ 4–5, 7.) Had Plaintiff sought an accommodation, CHCF RRC would have reviewed the request in good faith to determine whether to approve the request. (*Id.* ¶ 6.) Similarly, no record at the headquarters level show Plaintiff ever submitted requests for religious accommodation to either an RRC or the SRRC. (Richey Decl. ¶ 11.)
> Plaintiff never made efforts to learn about the available means to seek religious accommodations. (Declaration of Theodore Lee Exhibit 1 (Deposition Transcript of Plaintiff (Depo.)) at 49–58.) No prison staff prevented Plaintiff from seeking help to get items for his religious practices, nor did they interfere with Plaintiff's ability to seek help. (Depo. at 57–58.)

ECF No. 56-1, pgs. 9-11.

## II. DISCUSSION

In their motion for summary judgment, Defendants argue that Plaintiff cannot state a claim against them under RLUIPA. See ECF No. 56-1. Defendants also argue that, even if Plaintiff does state a claim, the undisputed facts show that Plaintiff cannot prevail. See id.

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974). Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities

5

where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349. The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993. However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on

6

religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the

7

practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89). In applying this test, the court must weight four factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged

practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Here, Defendants first argue that Plaintiff cannot state a valid RLUIPA claim because the undisputed evidence shows that Defendants never substantially burdened Plaintiff's religious practice. See ECF No. 56-1, pgs. 12-14.  Second, Defendants argue that, even if Plaintiff has stated a RLUIPA claim, he cannot prevail because Defendants' conduct further compelling state interests by the least restrictive means. See id. at 14-19.

Citing portions of Plaintiff's deposition testimony, Defendants initially note that Plaintiff has not practiced Thelema for the past two years. See ECF No. 56-1, pg. 13, n.3. According to Defendants:

> Plaintiff has not practiced Thelema for the past two years, during which he did not consider it at all important. (Depo. at 25–26, 33, 58). Plaintiff's deposition testimony casts doubt on his previously professed sincerely held religious belief (*compare* Depo. at 25–26, *with* FAC at 17). Plaintiff's knowledge, familiarity, and command on Thelema is feeble at best. (*See, e.g.*, Depo. at 22–23, 25–27, 32, 35–36, 58–60.)

ECF No. 56-1, pg. 13, n.3.

To avoid unnecessary briefing on whether Plaintiff had a sincerely held religious belief in Thelema, Defendants "neither dispute nor concede that Plaintiff has a sincerely held religious belief in Thelema or its religious exercises." Id.  The Court will, therefore, presume for purposes of this analysis that Plaintiff held sincere beliefs in Thelema and focus on the evidence relating to whether Defendants substantially burdened Plaintiff's practice of Thelema.

First, Defendants contend that the undisputed evidence shows that Plaintiff could have sought and secured accommodations or exemptions relating to his practice of Thelema. See id. at 13.  Second, Defendants contend that they did not "make requesting and obtaining religious accommodations impossible or practically futile for Plaintiff." Id.  Third, Defendants assert that, because the applicable statutes and regulations applied to all inmates irrespective of their religious beliefs or practices, Defendants "had no reason to pressure Plaintiff to act in ways that violated his religious or make Plaintiff modify his behavior." Id. at 14.  Fourth, Defendants argue that there is no substantial burden traceable to them for the simple reason that Plaintiff never sought religious accommodations or exemptions. See id.

9

The Court finds Defendants' fourth argument dispositive. According to Defendants:

> There is no substantial burden traceable to Defendants for another reason. Plaintiff did not seek available religious exemptions or accommodations. (Depo. at 49–58; s*ee also* Richey Decl. ¶ 7, Exhibit 1.) Plaintiff chose not to, despite facing no challenges to do so. (*E.g.*, Depo. at 57–58.) Most importantly, Plaintiff opted to rely on a fellow inmate—Tracy Taylor—to secure religious accommodations. [footnote 4] (Depo. at 44, 46, 49–51, 54, 56–58.) Whatever substantial burden Plaintiff endured, it stemmed directly from his decisions alone. Because Plaintiff cannot show that Defendants substantially burdened his religious exercise, his federal claims are invalid.

ECF No. 56-1, pg. 14.

At footnote 4, Defendants add:

> Taylor has largely dictated Plaintiff's Thelema beliefs and practices; for example, Plaintiff considers Taylor his spiritual leader, along with accepting and adopting whatever Thelema teaching or representation Taylor provides, despite Taylor occupying no formal Thelema leadership position. (*See* Depo. at 16–24, 27, 32, 41–45.)

ECF No. 56-1, pg. 14, n.4.

Defendants cite to Plaintiff's August 31, 2022, deposition testimony. See ECF No. 56-3 (Lee declaration); see also lodged deposition transcript. Defendants' citations are persuasive. Plaintiff testified that Mr. Taylor, a fellow inmate, was Plaintiff's "spiritual advisor." As to requests for accommodation, Plaintiff further testified that he assumed Taylor was handling it and admitted that he personally did not follow up. Plaintiff also testified that he never reached out to any chaplain at the prison to ask for help in getting items he wanted for practice of Thelema. According to Plaintiff, no correctional staff ever told him that he could not ask a chaplain for assistance with religious accommodations. Additionally, Plaintiff testified that he believes Defendants are liable for denying his inmate grievance concerning accommodations.

Based on Plaintiff's testimony, which Plaintiff has not contested, it is undisputed that whatever problems Plaintiff faced with respect to the practice of Thelema were of his own making by relying on another inmate and not personally following up on any request for accommodation. Further, Defendants cannot be held liable simply by virtue of their participation in the inmate grievance process. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999)

(finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

Put simply, the undisputed evidence fails to establish a causal connection between Defendants – who are high-level supervisory personnel – and a RLUIPA violation. To prevail on a claim under 42 U.S.C. § 1983, the plaintiff must establish an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically established. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

As discussed above, the undisputed evidence shows that Plaintiff cannot establish a causal link between the named defendants and a violation of RLUIPA because Defendants' involvement as supervisory personnel extended no further than review of Plaintiff's inmate grievance. For this reason alone, Defendants are entitled to summary judgment in their favor as a matter of law.

In their motion for summary judgment, Defendants seek leave to file supplemental briefing as to any cognizable state law claims.  See ECF No. 56-1, pg. 12, n.2.  Supplemental briefing is unnecessary.  Given that Plaintiff cannot prevail on his federal claim, the Court should decline to exercise supplemental jurisdiction over any state law claims.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' unopposed motion for summary judgment, ECF No. 56, be GRANTED as to Plaintiff's RLUIPA claim and that the Court DECLINE to exercise supplemental jurisdiction over any state law claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 7, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE