1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   LARRY SMITH,                              No.  2:20-CV-0071-DAD-DMC-P

12                    Plaintiff,

13        v.                                   <u>FINDINGS AND RECOMMENDATIONS</u>

14   CONNIE GIPSON, et al.,

15                    Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983 alleging violation of his rights under the Religious Land Use and

19   Institutionalized Persons Act of 2000 (RLUIPA).  Pending before the Court is Defendants'

20   unopposed motion for summary judgment.  <u>See</u> ECF No. 56.

21              The Federal Rules of Civil Procedure provide for summary judgment or summary

22   adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

23   together with affidavits, if any, show that there is no genuine issue as to any material fact and that

24   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

25   standard for summary judgment and summary adjudication is the same.  <u>See</u> Fed. R. Civ. P.

26   56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of

27   the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  <u>See</u>

28   / / /

1

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

1    court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

2    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

3    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

4    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

5    1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

6    judge, not whether there is literally no evidence, but whether there is any upon which a jury could

7    properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

8    imposed." Anderson, 477 U.S. at 251.

9

10                                        **I.  BACKGROUND**

11        A.        **Plaintiff's Allegations**

12                This action currently proceeds on Plaintiff's first amended complaint on Plaintiff's

13    claims that Defendants thwarted the free exercise of his religion in violation of RLUIPA.  See

14    ECF No. 30; see also ECF No. 31.  As Defendants' motion for summary judgment is unopposed,

15    the Court accepts Defendants' summary of Plaintiff's allegations as follows:

16                    Plaintiff alleges Defendants violated his right under Religious
                Land Use and Institutionalized Persons Act (RLUIPA). (First Amended
17              Complaint (FAC) (ECF No. 30) at 3.) Specifically, Plaintiff contends
                Defendants reduced his RLUIPA right to a privilege because they created
18              regulations that restricted him from possessing and using certain items
                necessary for his religious belief in Thelema. (Id.) These items are
19              colognes, perfumes, incense sticks, tobacco products, rolling papers,
                lighters and matches, and different colored charm bags. (Id.) Plaintiff
20              claims he needs to have religious oils, perfumes, and colognes in sixteen
                fluid ounces per each order, from vendors of his choice, in his cell. (Id.)
21              Plaintiff also asserts he must have three to five pounds of loose tobacco,
                rolling papers, a pipe, and matches or lighters each month from vendors of
22              his choice, and keep said items in his cell to practice a "wheel of love"
                ceremony. (Id.) According to Plaintiff, he must smoke the loose tobacco in
23              his pipe to perform the ceremony. (Id.) Plaintiff further argues Defendants
                created and enforced regulations that required him to purchase his
24              religious items from departmentally approved vendors, none of which sell
                the religious items he wants. (Id. at 4.)
25                    Plaintiff seeks injunctive relief to be able to possess and use
                sixteen fluid ounces of religious oils, perfumes, and colognes per each
26              order, three to five pounds of tobacco products, 300 to 500 rolling papers
                each order every thirty days, and matches. (Compl. at 6.) Plaintiff also
27              seeks to purchase said items from vendors of his choice and possess the
                items in his cell for religious use. (Id.) Plaintiff also asks to get an
28              exemption for religious artifacts "similar to those granted to other inmates

in CDCR custody," without specifying what such exemptions entail. (*Id.*)

ECF No. 56-1, pg. 8.

**B.    Procedural History**

On August 23, 2021, the Court determined that Plaintiff's first amended complaint was appropriate for service. See ECF No. 31. Defendants waived service and filed their answer on October 19, 2021. See ECF No. 38. Thereafter, the matter was scheduled. See ECF No. 46. Following the close of discovery, Defendants filed the currently pending motion for summary judgment on January 17, 2023. See ECF No. 56.

On July 27, 2023, the Court issued an order addressing Plaintiff's fourth motion for an extension of time to file an opposition to Defendants' motion for summary judgment. See ECF No. 71. In this order, the Court stayed proceedings due to Plaintiff's recent health issues and separation from his legal materials incident to a prison transfer and required Plaintiff to file periodic status reports. See id. On September 5, 2023, Plaintiff filed a status report indicating that he was ready to proceed. See ECF No. 73. Based on Plaintiff's status report, on January 23, 2024, the Court lifted the stay of proceedings and provided Plaintiff 30 days within which to file an opposition to Defendants' motion for summary judgment. See ECF No. 74. As of March 7, 2024, Plaintiff had not filed any opposition, and the Court issued findings and recommendations addressing Defendants' motion. See ECF No. 75. Plaintiff filed objections on March 29, 2024. See ECF No. 78.

The findings and recommendations recommended that Defendants' motion for summary judgment be granted because the undisputed evidence fails to establish a causal connection between Defendants and a violation of RLUIPA. See ECF No. 75. On April 17, 2024, the District Judge issued an order disagreeing with this conclusion based on a portion of Plaintiff's deposition testimony attached to Defendants' motion for summary judgment. See ECF No. 79. The District Judge referred the matter back to the undersigned for consideration of other arguments raised in Defendants' motion but not addressed in the March 7, 2024, findings and recommendations. See id. On July 14, 2024, the Court issued an order providing Plaintiff a final opportunity to file an opposition to Defendants' motion for summary judgment within 30 days.

4

1    See ECF No. 80.  To date, Plaintiff has not filed an opposition.

2

3                              **II.  THE PARTIES' EVIDENCE**

4           Defendants' motion for summary judgment is supported by a separate statement of

5    undisputed facts, ECF No. 56-2, the declaration of defense counsel Theodore Lee, Esq., and

6    attached exhibits, ECF No. 56-3, the declaration of C. Richey and attached exhibits, ECF No. 56-

7    4, the declaration of J. Guevara, ECF No. 56-5, and the transcript of Plaintiff's deposition, which

8    has been lodged with the Court.

9           The Court accepts Defendants' statement of undisputed facts, which Plaintiff does

10    not challenge:

11              California state prisoners may not possess or use tobacco products.
       Cal. Penal Code (Penal Code) § 5030.1(a). However, an exemption is
12       possible for departmentally approved religious ceremonies. *Id.* The
       California Department of Corrections and Rehabilitation (CDCR) enforces
13       this statute by prohibiting any possession or use of tobacco products "on
       the grounds of any institution/facility that houses or detains inmates." Cal.
14       Code Regs. tit. 15 (Title 15), § 3188(c). CDCR has the discretion to permit
       inmates' use of tobacco products in departmentally approved inmate
15       religious ceremonies. *Id.*, § 3188(c)(1).
              California state prisoners may possess and use personal religious
16       properties purchased from departmentally or locally approved vendors.
       Title 15, § 3190(b), (k)(4). Specifically, the Religious Personal Property
17       Matrix (RPPM) lists all items that state prisoners may purchase, possess,
       or use. *Id.*, § 3190(b).
18              Each institution's warden must "make every reasonable effort to
       provide for the religious and spiritual welfare of all interested inmates . . .
19       ." Title 15, § 3210(a). Institutions may provide accommodations for
       religious services that are "in keeping with facility security and other
20       necessary institutional operations and activities." *Id.* § 3210(c). "A request
       for a religious service accommodation that requires a specific time,
21       location and/or item(s) not otherwise authorized, will be referred to a
       Religious Review Committee (RRC) for review and consideration." *Id.* §
22       3210(d). "Accommodation for religious services that are not granted, shall
       be for reason(s) which would impact facility/unit safety and security, and
23       orderly day to day operations of the institution." *Id.*
              If the Penal Code or Title 15 proscribes a religious exercise,
24       inmates may request approval to engage in said exercise by submitting a
       CDCR Form 3067 to their respective housing institution's RRC. (*See*
25       Declaration of C. Richey (Richey Decl.) ¶ 8, Exhibit 2.) The RRC also
       reviews custody staff's recommendation to disapprove requested religious
26       items. (*Id.* ¶ 7.) After its review, the RRC forwards its recommendation to
       the Statewide Religious Review Committee (SRRC) using a CDCR Form
27       2279. (*Id.*, Exhibit 1.)

28    / / /

                                          5

At the SRRC, a subcommittee comprised of a warden, community resource manager, and legal counsel will review the RRC's recommendation. (Richey Decl. ¶ 12.) The full SRRC will then deliberate and vote on the recommendation for a final decision. (*Id.*) "SRRC's review and approval process does not differ based on the nature or identity of the requesting religious, faith, or spiritual group or belief." (*Id.* ¶ 13). "The process also does not take into account the requesting inmates' personal identifying information, such as race, ethnicity, ancestral heritage, nationality, gender, sexuality, age, disability, or others, that are not relevant for its review and approval process." (*Id.*)

Plaintiff claims to hold a religious belief in Thelema since 2018. (FAC at 18.) CDCR form 2279 form has been available to all CDCR inmates at their respective housing institutions since December 2014. (Richey Decl. ¶ 7.) CDCR form 3067 is available through each CDCR facility's chaplains and community resources manager. (*Id.* ¶ 8.)

In May 2021, Plaintiff resided at California Health Care Facility (CHCF). (FAC at 1, 6; Declaration of J. Guevara (Guevara Decl.) ¶ 5.) During his time at CHCF, Plaintiff never sought any religious accommodations to practice his religion, despite being able to do so. (Guevara Decl. ¶¶ 4–5, 7.) Had Plaintiff sought an accommodation, CHCF RRC would have reviewed the request in good faith to determine whether to approve the request. (*Id.* ¶ 6.) Similarly, no record at the headquarters level show Plaintiff ever submitted requests for religious accommodation to either an RRC or the SRRC. (Richey Decl. ¶ 11.)

Plaintiff never made efforts to learn about the available means to seek religious accommodations. (Declaration of Theodore Lee Exhibit 1 (Deposition Transcript of Plaintiff (Depo.)) at 49–58.) No prison staff prevented Plaintiff from seeking help to get items for his religious practices, nor did they interfere with Plaintiff's ability to seek help. (Depo. at 57–58.)

ECF No. 56-1, pgs. 9-11.


Plaintiff has not filed an opposition, though the Court has considered Plaintiff's verified first amended complaint as his declaration where appropriate.


## II. DISCUSSION

In their motion for summary judgment, Defendants first argue that Plaintiff cannot prevail on his RLUIPA claim because the undisputed evidence shows that Defendants never substantially burdened Plaintiff's religious practice. See ECF No. 56-1, pgs. 12-14. Second, Defendants argue that, even if they did substantially burden Plaintiff's religious practice, Plaintiff still cannot prevail because Defendants' conduct furthered compelling state interests by the least restrictive means. See id. at 14-19. Third, Defendants argue they are entitled to qualified immunity. See id. at 19-20.

A.    **RLUIPA**

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.  See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives.  See McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test."  See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d

1  732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of

2  Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free

3  exercise challenges brought by prison inmates).

4          Congress then enacted the Religious Land Use and Institutionalized Persons Act

5  (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of

6  Boerne."  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir.

7  2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on

8  religious exercise unless there exists a compelling governmental interest and the burden is the

9  least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the

10  Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible

11  with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates

12  exceptional government-created burdens on private religious exercise.'"  Warsoldier, 418 F.3d at

13  994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by

14  replacing the "reasonableness test" articulated in Turner with the "compelling government

15  interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

16          Under both the First Amendment and RLUIPA, the prisoner bears the initial

17  burden of establishing that the defendants substantially burdened the practice of his religion by

18  preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio,125 F.3d

19  732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d

20  at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a

21  "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining

22  "substantial burden" in the First Amendment context).  To show a substantial burden on the

23  practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the

24  adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by

25  the religion or by preventing him or her from engaging in conduct or having a religious

26  experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir.

27  1987).  The burden must be more than a mere inconvenience.  See id. at 851.

28  / / /

8

1    Under RLUIPA, the government is required to ". . . meet the much stricter burden

2 of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling

3 government interest; and is the least restrictive means of furthering that compelling governmental

4 interest.'" <u>Green v. Solano County Jail</u>, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C.

5 § 2000cc-1(a)(1)-(2) and 2(b)); <u>see also</u> <u>Warsoldier</u>, 418 F.3d at 994-95.  Prison security is an

6 example of a compelling governmental interest.  <u>See</u> <u>Green</u>, 513 F.3d at 989 (citing <u>Cutter</u>, 125

7 S.Ct. at 2113 n.13).  In establishing that the regulation or restriction is the least restrictive means

8 to achieve a compelling governmental interest, prison officials must show that they actually

9 considered and rejected the efficacy of less restrictive means before adopting the challenged

10 practice.  <u>See</u> <u>Green</u>, 513 F.3d at 989 (citing <u>Warsoldier</u>, 418 F.3d at 999).

11    As to the merits of Plaintiff's RLUIPA claim, citing portions of Plaintiff's

12 deposition testimony Defendants initially note that Plaintiff has not practiced Thelema for the past

13 two years.  <u>See</u> ECF No. 56-1, pg. 13, n.3.  According to Defendants:

14    Plaintiff has not practiced Thelema for the past two years, during
which he did not consider it at all important. (Depo. at 25–26, 33, 58).

15    Plaintiff's deposition testimony casts doubt on his previously professed
sincerely held religious belief (*compare* Depo. at 25–26, *with* FAC at 17).

16    Plaintiff's knowledge, familiarity, and command on Thelema is feeble at
best. (*See, e.g.*, Depo. at 22–23, 25–27, 32, 35–36, 58–60.)

17

18    ECF No. 56-1, pg. 13, n.3.

19    To avoid unnecessary briefing on whether Plaintiff had a sincerely held religious

20 belief in Thelema, Defendants "neither dispute nor concede that Plaintiff has a sincerely held

21 religious belief in Thelema or its religious exercises."  Id.  The Court will, therefore, presume for

22 purposes of this analysis that Plaintiff held sincere beliefs in Thelema and focus on the evidence

23 relating to whether Defendants substantially burdened Plaintiff's practice of Thelema and whether

24 Defendants' conduct furthered compelling state interests in the least restrictive means.

25 / / /

26 / / /

27 / / /

28 / / /

9

1

2

                    1.       <u>Whether Plaintiff Can Establish a Substantial Burden on His Practice</u>
                                   <u>of Thelema</u>

3

4

        Defendants raise three arguments related to the burden on Plaintiff's practice of

5

Thelema. First, Defendants contend the undisputed evidence shows that Plaintiff could have

6

sought and secured accommodations or exemptions relating to his practice of Thelema, and that

7

they did not "make requesting and obtaining religious accommodations impossible or practically

8

futile for Plaintiff." <u>Id.</u> at 13. Second, Defendants assert that, because the applicable statutes and

9

regulations applied to all inmates irrespective of their religious beliefs or practices, Defendants

10

"had no reason to pressure Plaintiff to act in ways that violated his religion or make Plaintiff

11

modify his behavior." <u>Id.</u> at 14. Third, Defendants argue that there is no substantial burden

12

traceable to them for the simple reason that Plaintiff never sought religious accommodations or

13

exemptions. <u>See id.</u>

        The District Judge has rejected Defendants' third argument. <u>See</u> ECF No. 79.

14

Specifically, the District Judge concluded as follows:

15

              . . . [I]n a portion of plaintiff's deposition attached to defendants'

16

        pending motion and thus before the court on summary judgment, plaintiff
        testified that he had in fact himself requested a religious accommodation

17

        through the inmate grievance process by submitting a form 602 making
        such a request. (<i>See</i> Doc. No. 56-3 at 27.) That same transcript reflects

18

        that at plaintiff's deposition, defendants' counsel appeared to accept that
        submitting a 602 appeal on the subject was a sufficient way in which to

19

        request a religious accommodation. (<i>See id.</i> at 36 ("[S]o besides 602 what
        other ways did you try to get a religious accommodation?"); <i>see also id.</i> at

20

        38 ("[Plaintiff:] I said defendant Diaz and Gipson refused to comply with
        that law to grant exemption for tobacco products in religious exercises.

21

        What do I mean by that? They denied my 602.")). In their pending motion
        for summary judgment, defendants do not address or explain in what way

22

        the filing of such a 602 inmate appeal, and the denial of that appeal by
        prison officials including named defendants, would not constitute an

23

        adequate request for religious accommodation. . . . Based upon the
        evidence before the court on summary judgment, at the very least there

24

        exists a disputed issue of material fact as to whether plaintiff requested a
        religious accommodation from defendants.

25

        ECF No. 79, pg. 3.

26

27

/ / /

28

/ / /

1          The undersigned rejects Defendants' first and second arguments.  According to

2    Defendants:

3                  . . . First, Plaintiff could have sought—and secured—
            accommodations or exemptions for his religious exercise during at all

4            times relevant here. *See* Title 15, § 3210(d); (Richey Decl. ¶¶ 7–8, 12;
            Guevara Decl. ¶¶ 4–5, 7.) Thus, unlike the other cases' challenged laws

5            and regulations, Defendants did not totally ban Plaintiff's religious
            exercise. *See Ramirez*, 142 S. Ct. at 1278–1281 (total ban on audible

6            prayer and religious touch by death-row inmate's pastor in execution
            chamber); *Johnson*, 23 F.4th at 1215–16 (total ban on possession and use

7            of scented oil in cell); *Greene*, 513 F.3d at 988 (total ban on group
            worship). And neither did Defendants make requesting and obtaining

8            religious accommodations impossible or practically futile for Plaintiff. *See
            Holt*, 574 U.S. at 369 (restriction on beard greater than half an inch in

9            length, without available religious accommodations); *Warsolider*, 418
            F.3d at 996 (restriction of hair length over three inches, without available

10           religious accommodations).
                  Second, all the statutes and regulations at issue here applied to all

11           inmates, irrespective of their religious beliefs or practices. *See, e.g.*, Penal
            Code § 5030.1(a); Title 15, §§ 3188, 3190. Therefore, Defendants had no

12           reason to pressure Plaintiff to act in ways that violated his religion or
            make Plaintiff modify his behavior. *See Warsoldier*, 418 F.3d at 995.

13           These facts support that Defendants did not substantially burden Plaintiff's
            religious exercise.

14

15           ECF No. 56-1, pgs. 13-14.

16           While Defendants' evidence certainly shows that mechanisms were in place which

17   would allow Plaintiff to seek religious accommodations and, therefore, this case does not involve

18   any sort of total ban on Plaintiff's practice of Thelema, Defendants do not explain how this

19   establishes Plaintiff's inability to prove that his practice of Thelema was nonetheless substantially

20   burdened.  Absence of a total ban does not equate to absence of a substantial burden.  Likewise,

21   even if Defendants "had no reason to pressure Plaintiff," this conclusory statement, unsupported

22   by citation to any evidence, does not establish the non-existence of a genuine issue of material

23   fact on the issue.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

2.    <u>Whether Defendants' Conduct Furthered Compelling State Interests</u>
      <u>by the Least Restrictive Means</u>

As discussed above, the District Judge has determined that there is a genuine issue

of material fact as to whether Plaintiff requested religious accommodations from Defendants, and

the undersigned herein finds that Defendants have not otherwise met their burden on summary

judgment of establishing the non-existence of a material fact with respect to the burden on

Plaintiff's practice of Thelema.  Assuming for purposes of this analysis that Plaintiff requested

religious accommodations and that Plaintiff's practice of Thelema was substantially burdened,

Defendants are nonetheless entitled to summary judgment if they can establish that their conduct

furthered compelling state interests by the lest restrictive means.

According to Defendants:

> Even if the Court finds that Defendants substantially burdened
> Plaintiff's religious exercise, they are not liable if doing so furthered
> compelling state interests in the least restrictive means. The regulations
> already allow altar cloths, medicine bags, prayer oil, and stones. Title 15,
> § 3190(c). Thus, the central question is whether the restrictions on the
> remaining items further some compelling state interest in the least
> restrictive means. Evidence shows Defendants' enforcement of said
> restrictions satisfies both requirements, meaning there is no genuine
> dispute on whether Defendants violated RLUIPA.

ECF No. 56-1, pg. 14.

i.    <u>State Interests at Issue</u>

In the first amended complaint, Plaintiff seeks injunctive relief allowing him to

possess and use religious oils, perfumes, and cologne, as well as tobacco products and matches.

<u>See</u> ECF No. 30, pg. 6.  Plaintiff also seeks to be allowed to purchase these items from vendors of

his choice and to be allowed to possess these items in his cell.  <u>See</u> <u>id.</u>  Defendants' motion

addresses these items in two groups – tobacco products and "other items."  ECF No. 56-1, pgs.

15-16.

/ / /

/ / /

/ / /

/ / /

12

a.    Tobacco Products

Defendants argue:

> Defendants' actions furthered compelling governmental interests. First, Defendants had a compelling interest in avoiding liability for not enforcing a mandatory duty. Under California law, Defendants must implement the statutory prohibition of inmates' possession and use of tobacco products. Penal Code § 5030.1(a) ("The Director of Corrections shall adopt regulations to implement this prohibition . . . ."). [footnote omitted]. . . .
> The regulatory restrictions on tobacco products served compelling state interests in other ways too. The California Legislature identified several justifying and beneficial reasons behind the Penal Code's tobacco products ban, such as enhanced prison security, improved inmate health, and reduced operational costs. *See Jun. 1, 2004, Hearing on A.B. 384 Before the S. Comm. on Pub. Safety*, 2003-2004 Legis. (Cal. 2004) (bill analysis)). [footnote omitted]. Moreover, several federal litigations in the past concerned state prisoners' claim that prison officials violated their Eight Amendment rights by exposing them to harm related to environmental tobacco smoke. *E.g.*, *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *see also Garcia v. Maddock*, 64 Fed. App'x 10, 12–13 (9th Cir. 2003). . . .

ECF No. 56-1, pgs. 15-16.

The Court agrees that protecting prisoners' welfare by preventing exposure to second-hand tobacco smoke is a compelling state interest which justifies a prison ban on tobacco products and paraphernalia such as matches, rolling papers, and lighters.  See DeShaney v. Winnebago Cnty. Dept. of Soc. Servs., 489 U.S. 189, 199-200 (1989).

b.    "Other Items"

According to Defendants:

> The restrictions on the other items Plaintiff seeks furthered a compelling state interest in prison security. Prisoners regularly smuggle contraband into correctional facilities. *E.g.*, *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The contraband present in inmates' housing institutions wreak havoc on the general inmate population, including various health care issues and inmate deaths. [footnote omitted]. This unfortunate reality remains true today. *See generally* Keith Clement, et al., *Contraband Interdiction Pilot Program (CIPP), Full Evaluation Report* 15–23 (2021). Additionally, California prisons have consistently suffered from inmates' rampant violence. *See generally* Valerie Jenness, et al., *Violence in California Correctional Facilities: An Empirical Examination of Sexual Assault* 3–4 (2007); Amy E. Lerman, *Managing Prison Violence: Perceptions of Safety Among California Correctional Officers* 13–15 *(2006).* To manage and mitigate such difficulties, Defendants regulate inmates' possession and use of items—such as certain scented liquids, rings, and gemstones—that inmates can use to smuggle in contraband or as weapons. *See Title 15, § 3190.* And doing so naturally upholds and

1
2
3

promotes prison security and discipline, as well as the safety of those who live and work therein. In sum, Defendants' enforcement of regulatory restrictions of the items at issue here indisputably furthered compelling state interests. *See, e.g., Overton v. Bazzetta, 539 U.S. at 133; DeShaney, 489 U.S. at 199–200; Wolfish, 441 U.S. at 547.*

4          ECF No. 56-1, pgs. 16-17.

5          The Court agrees with Defendants that maintaining prison security is a compelling

6    state interest.  At issue in this case are "other items" which were restricted, such items include

7    colognes, perfumes, incense sticks, and different colored charm bags.  While Defendants are

8    correct that maintaining prison security is a compelling state interest, the Court finds that

9    Defendants have not met their initial burden on summary judgment of explaining how restrictions

10   on the specific "other items" at issue in this case further that interest by enhancing security.

11   Defendants' contention that "other items" can be used as weapons or conduits for smuggling

12   contraband into the prison is conclusory and unsupported by any citation to the evidence or case

13   authority.

14          ii.     Means of Furthering State Interests

15          Under RLUIPA, a substantial burden on an inmate's religious exercise must be the

16   least restrictive means to further a compelling state interest.  See 42 U.S.C. § 2000cc-1(a); see

17   also Jones v. Slade, 23 F.4th 1124, 1139 (9th Cir. 2022); Khatib v. Cnty. of Orange, 639 F.3d

18   898, 900 (9th Cir. 2011) (en banc).  The inquiry focuses on whether the challenged government

19   regulation achieves a compelling interest in the context of application to the affected individual.

20   See Hold v. Hobbs, 574 U.S. 352, 362-63 (2015) (citing Burwell v. Hobby Lobby Stores, Inc.,

21   573 U.S. 682, 726 (2014)).  The least restrictive means of advancing a compelling state interest is

22   accomplished where there is an absence of alternative ways to achieve those interests.  See id. at

23   364-65.  Factors the Court considers are whether the challenged regulations are underinclusive

24   and how other government entities handle the religious exercise at issue.  See id. at 367-68;

25   Johnson v. Baker, 23 F.4th 1209, 1215–16 (9th Cir. 2022).

26   / / /

27   / / /

28   / / /

14

1    Addressing the restrictions as to tobacco products and "other items" together,

2    Defendants argue:

3            Defendants had no less restrictive means to further the earlier
     identified compelling state interests. No CDCR personnel could restrict
4    inmates' tobacco products possession and use through a less restrictive
     alternative so long as Penal Code section 5030.1 remained in effect.
5    Separately, Defendants could not have instituted precisely tailored
     regulations for Plaintiff, as Thelema's central tenet enables infinite
6    religious observances. *See Grayson v. Schuler*, 666 F.3d 450, 455 (7th Cir.
     2012). [footnote omitted]. The regulations at issue were not underinclusive
7    because Defendants also regulated inmates' non-religious personal items
     to ensure inmate safety and prison security. *See* Cal. Code. Regs. tit. 15, §
8    3190(b)(1)-(5), (c)-(d). Also, Defendants' enforcement is neither novel nor
     exceptional, as other correctional agencies have similar regulations. *See,*
9    *e.g.*, 28 C.F.R. § 548.16 (2022) (regulation of inmate religious property,
     including prayer oils); *id.* § 551.160 (tobacco smoking restriction). . . .

10
     ECF No. 56-1, pg. 18.
11

12           Turning first to the restrictions relating to tobacco products and paraphernalia, the

13   Court finds that the challenged regulation is the least restrictive means of accomplishing the

14   legitimate penological goal of protecting inmate and staff health by preventing exposure to

15   second-hand tobacco smoke and, as to lighters and matches specifically, by promoting inmate and

16   staff safety.  See e.g. Ward v. Walsh, 1 F.3d 873, 879 (9th Cir. 1993) (affirming prohibition on

17   prisoners having candles in their cells).

18           As to "other items" at issue in this case, which Defendants do not separately

19   discuss, the Court finds that Defendants have not met their burden on summary judgment of

20   showing, as a matter of law, that the prohibition on possession of colognes, perfumes, incense

21   sticks, and different colored charm bags, are the least restrictive means of achieving a compelling

22   state interest because Defendants have not established that a compelling interest is associated with

23   prohibition of these items.

24       **B.**    **<u>Qualified Immunity</u>**

25           Government officials enjoy qualified immunity unless their conduct violates

26   "clearly established statutory or constitutional rights of which a reasonable person would have

27   known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects

28   "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475

15

U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right.  See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

16

1    has discretion to determine which of the <u>Saucier</u> factors to analyze first.  <u>See</u> <u>Pearson v. Callahan</u>,

2    555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

3    most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  <u>See</u>

4    <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).

5                As discussed above, the Court finds that Plaintiff cannot establish a RLUIPA

6    violation based on regulations relating to possession of tobacco products and paraphernalia.

7    Specifically, the regulations prohibiting inmate possession of tobacco products and paraphernalia

8    advance compelling penological interest in the least restrictive means.  However, taking the facts

9    alleged in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a showing

10   of violation of RLUIPA with respect to the challenged prohibitions on "other items."  The

11   question, then, is whether Plaintiff's rights under RLUIPA associated with "other items" was

12   clearly established at the time the regulations were applied to Plaintiff.

13               The Court finds that it was not.  Consistent with the qualified immunity analysis,

14   the Court defines the right at issue more broadly than the denial of generalized rights under

15   RLUIPA and more narrowly than the facts alleged regarding the specific "other items" at issue,

16   such as perfumes, incense, charm bags, and the like.  Specifically, the Court focuses on Plaintiff's

17   right under RLUIPA to freedom to practice his Thelema faith by using ceremonial items.  The

18   Court is aware of no authority addressing the use of ceremonial items as part of the practice of

19   Thelema.  Indeed, as Judge Posner has observed, the central tenet of Thelema is "Do what thou

20   wilt."  <u>Grayson v. Schuler</u>, 666 F.3d 450, 455 (9th Cir. 2012).   Thus, "Thelema's single

21   mandatory tenet invites an infinity of optional observances."  <u>Id.</u>  Given the foregoing, the Court

22   cannot say that a reasonable prison official would have believed that a prohibition on one of an

23   infinity of observance options violated Plaintiff's rights under RLUIPA to practice according to

24   the Thelema faith.

25               The Court finds that Defendants are entitled to qualified immunity as to Plaintiff's

26   RLUIPA claim relating to possession of tobacco products and paraphernalia because Plaintiff

27   cannot establish a statutory violation.  Defendants are also entitled to qualified immunity as to

28   Plaintiff's RLUIPA claim relating to possession of "other items," which include colognes,

17

perfumes, incense sticks, and different colored charm bags, because Plaintiff's rights associated with those items was not clearly established at the time the regulations were applied to Plaintiff.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' unopposed motion for summary judgment, ECF No. 56, be GRANTED as to Plaintiff's RLUIPA claim and that the Court decline to exercise supplemental jurisdiction over any state law claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 27, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE